```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA


SHAWN C. SHARP,              )
          Plaintiff,         )
                             )
     vs.                     )    Civil Action No. 00-2156
                             )
SUPERINTENDENT PHILIP L.     )
JOHNSON; ET Al.,             )
          Defendants.        )
```

OPINION AND ORDER

HAY, Magistrate Judge

Plaintiff, Shawn C. Sharp, an inmate previously confined at the State Correctional Institution at Pittsburgh, Pennsylvania (SCIP), commenced this civil action against various officials and/or employees of the Pennsylvania Department of Corrections (DOC) at SCIP and/or the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania, where Plaintiff now is confined. Plaintiff asserts that he is a practicing member of the Muslim faith. He complains that the Defendants have refused to provide him with religious accommodation, specifically, Sunni Muslim services and practices.

Plaintiff seeks to assert liability against the Defendants pursuant to 42 U.S.C. § 1983[1], claiming that the

---

1   Title 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute,
    ordinance, regulation, custom, or usage, of any State
    or Territory, subjects, or causes to be subjected, any
    citizen of the United States or other person within

Defendants have: (1) violated his right to the free exercise of his religion as protected by the First and Fourteenth Amendments; (2) violated his right to the free exercise of his religion as protected through the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. Section 2000cc, et seq.; (3) violated the Eighth Amendment's prohibition against cruel and unusual punishment; and (4) violated the Fourteenth Amendment due to his confinement in administrative custody[2] for nearly thirty months.

    In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to have a United States magistrate judge conduct all proceedings in this case, including the entry of a final judgment.[3]

---

    the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2    "Administrative custody is a 'status of confinement for non-disciplinary reasons which provides closer supervision, control, and protection than is provided in general population.'  Commonwealth of Pa., Dep't of Corr., Administrative Custody Procedures, Policy Statement DC-ADM 802 IV(A)(Oct. 29, 1992)."  Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003).  It appears to be undisputed that this is the policy that was in place during Plaintiff's initial placement and continued confinement in administrative custody status at SCI-Pittsburgh and SCI-Greene.

3    Doc. no. 59.

Presently before the Court is Defendants' Motion for Partial Summary Judgment (doc. 70) as to Plaintiff's third and fourth claims.  For the reasons that follow, Defendants' motion is granted.

### *Standard of Review*

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case.").  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989)(citing Celotex Corp., supra at 322-24).  Once that burden has been met, the non-moving party must set forth specific facts showing that there is a genuine issue for trial or the factual

record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

### *Liability under 42 U.S.C. § 1983*

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: (1) that the alleged misconduct was committed by a person acting under color of state law; and (2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), <u>overruled in part on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986). There is no dispute here that Defendants' actions were done under color of state law. Thus, we turn now to the second threshold requirement.

### *Eighth Amendment Claim - Cruel and Unusual Punishment*

Plaintiff asserts that Defendants' actions in confining him in administrative custody for over thirty months amounted to cruel and unusual punishment. The Eighth Amendment[4], which

---

4   The Eighth Amendment provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

prohibits the infliction of cruel and unusual punishment, guarantees that prison officials must provide humane conditions of confinement. In this respect, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347. The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Id. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

Plaintiff's Second Amended Complaint alleges that he has a medical condition resulting from gastric surgery that requires him to eat six small meals a day to maintain proper health. He claims that the defendants were aware of such condition and acted with deliberate indifference by keeping him in administrative custody where his dietary needs were not met. He further complains that he was deprived of access to a telephone, denied access to visitors, suffered loss of work opportunities, loss of exercise, denied access to his personal property and art supplies and confined with disciplinary custody inmates. 2nd Am. Compl. ¶ 32.

As to Plaintiff's claims concerning the conditions of administrative custody ("AC") per se, his allegations do not state a claim upon which relief may be granted. See <u>Griffin v. Vaughn</u>, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

As to Plaintiff's claim of inadequate dietary needs, the Defendants have filed documentation indicating that Plaintiff was on a medically-approved gastrectomy diet that consisted of small portions of food several times a day. Doc. 70 at Exs. G, H & I. To this end, Plaintiff was given a supplemental food bag in addition to his food tray, three times a day. <u>Id.</u> The content

of his food trays and supplemental food bags was directed by the Clinical Dietician in Harrisburg. <u>Id.</u> Thus, even in administrative confinement, Plaintiff received six small meals a day in accordance with his medically-approved diet. <u>Id.</u> Plaintiff's complaint seems to concern the <u>contents</u> of his food trays and food bags. In this regard, however, Plaintiff's allegations do not state a claim of deliberate indifference under the Eighth Amendment. <u>See</u> <u>Ayers v. Uphoff</u>, 1 Fed. Appx. 851, 854, 2001 WL 15543, *2 (10th Cir. 2001)("plaintiff's dissatisfaction with the [physician prescribed dietary] menu at the prison is not sufficient to support an Eighth Amendment claim"). Moreover, Plaintiff voluntarily terminated his special diet while he was in administrative custody. Doc. 70 at Ex. H.

With regard to the remaining allegations, <u>i.e.</u>, that Plaintiff was deprived of access to a telephone, denied access to visitors, suffered loss of work opportunities, loss of exercise, denied access educational materials and to his personal property and art supplies, and was confined with disciplinary custody inmates, the record evidence is to the contrary. Plaintiff's periodic AC status reviews indicate that he routinely was granted privileges such as non-contact visitation, television, educational materials, phone calls, and the like. Moreover, Plaintiff has not demonstrated that even if deprived of these privileges, it would constitute a deprivation of "the minimal

civilized measure of life's necessities." Accordingly, Defendants are entitled to summary judgment as to Plaintiff's "Third Cause of Action - Eighth Amendment."

### *Fourteenth Amendment*

Plaintiff's fourth claim concerns his confinement in AC and asserts that his due process and equal protection rights have been violated. These assertions invoke the protections of the Fourteenth Amendment.[5]

#### Entitlement to Due Process Protections

Resolution of Plaintiff's Fourteenth Amendment claim first is addressed by referring to the United States Supreme Court's opinion in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). In <u>Sandin</u>, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "<u>atypical and significant hardship on the inmate in relation to</u>

---

5   The Fourteenth Amendment provides as follows:

>   Section 1.  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, §1.

the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added).

As explained by our Court of Appeals, an "atypical and significant hardship" under Sandin requires the examination of two factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of confinement in disciplinary segregation were significantly more restrictive than those imposed on other inmates in restrictive custody. Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). The record before this Court reveals that Plaintiff was placed in AC in late 1999 and remained there until his transfer to SCI-Greene on May 23, 2001. 2nd Am. Compl. ¶¶ 24, 31; Doc. 70 at Exs. B & C. He was confined in AC at SCI-Greene until May 9, 2002. 2nd Am. Compl. ¶ 31; Doc. 70 at Ex. E. Employing the due process analysis in Sandin, the federal courts, including the United States Court of Appeals for the Third Circuit, have concluded that placement in restrictive confinement for periods of up to one year, and more, does not trigger a constitutionally protected liberty interest as it does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (upholding district court's dismissal of prisoner's due process claim concerning seven months disciplinary detention); Griffin v. Vaughn, 112 F.3d at 706 (holding that it

is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence).

Plaintiff's detention in AC lasted approximately thirty months. This amount of time may impose an atypical and significant hardship in relation to the ordinary incidents of his prison sentence sufficient to give rise to a protected liberty interest. The issue thus becomes whether Plaintiff received the process he was due for his confinement.

### Due Process Requirements

Having concluded that Plaintiff may have a protected liberty interest that has been impacted by his segregation in administrative custody, it now must be determined whether he has received "due process" in connection with his continued confinement. In making this determination, it must be remembered that the requirements of due process are "flexible and variable dependent upon the particular situation being examined." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 12 (1979).

The Supreme Court has provided significant guidance as to appropriate due process protections in connection with inmate segregation in administrative custody. In Hewitt v. Helms, 459 U.S. 460 (1983), the Supreme Court was presented with the question of what process was due before a prison inmate could be

placed in administrative segregation.  The Supreme Court analyzed the issue utilizing the three factors identified in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), namely: (1) the private interests at stake in the governmental decision; (2) the governmental interests involved; and (3) the value of procedural requirements.  Hewitt, 459 U.S. at 473.

In Shoats v. Horn, 213 F.3d 140 (2000), our Court of Appeals determined what due process requirements must be afforded to long term AC inmates.  Shoats had been confined in AC for over eight years with no projected plans for his release.[6]  In fact, prison officials had indicated that his projected segregation in AC was indefinite and conceivably could continue for the rest of his life.  Notwithstanding, the Third Circuit determined that Shoats had received all the due process protections to which he

---

6   The prisoner Shoats belonged to a group known as "the Revolutionaries," a movement that sought the irradiation of all lawful authority within the black community.  In 1970, Shoats was convicted of Murder in the First Degree for his participation with other Revolutionary members in an attack on a Philadelphia Police Guardhouse, which resulted in the death of one police officer and the serious wounding of another.  On September 14, 1977, while serving his life sentence at SCI-Huntingdon, Shoats and several other inmates used force to gain control over a cell block in an effort to escape from prison.  Several guards were injured during the episode.  Shoats escaped from SCI-Huntingdon and entered the home of a guard at the prison and forced him, his wife, and their five-year-old son, to drive him in their car to a location outside of Cokesburg, Pennsylvania.  Shoats then ordered the hostages to enter the woods where he tied them to a tree and left them.  They remained captive for approximately three and one-half hours.  See Commonwealth v. Shoats, 297 Pa. Super. 236, 243, 443 A.2d 814, 817 (1982).

was entitled because he received periodic review of his AC status through the DOC procedures outlined in DOC policy statement 802. <u>Shoats</u>, 213 F.3d at 146.

In the case at bar, the record shows that inmate Sharp, like inmate Shoats, has had a long history of engaging in and encouraging prison disturbances. Doc. 70 at Ex. B.[7] As a result, Plaintiff was placed in AC at SCIP on November 30, 1999, per order of Lt. Blakely, in accordance with DC-ADM-802, Article 6, Section A, Subsection 1-F: "The inmate has been charged with, or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation." <u>Id.</u> On December 2, 1999, Plaintiff received a report that indicated that he was being confined in AC under DC ADM-802, VI.A.1.a: "The inmate is a danger to some person or persons in the institution who cannot

---

[7] Briefly summarized here, Exhibit B is a "Special Management Unit Transfer Request" prepared in October of 2000, which provides, inter alia, that Sharp was implicated in several planned disturbances at SCI-Huntingdon, prior to being received at SCI-Pittsburgh, and had instigated a fight between the Sunni and Shia' Muslims at SCI-Somerset, prior to being transferred to SCI-Pittsburgh. Once at SCI-Pittsburgh, Plaintiff apparently continued his effort to organize his Muslim Faction and repeatedly refused to obey the order by Deputy Superintendent Krysevig to cease this activity until the DOC recognized this group as a legitimate Muslim religious group. Accordingly, SCI-Pittsburgh found Plaintiff to be a threat to the security of the institution, with an established a pattern of instigating other inmates to participate in deviate behavior by threatening retaliation against non-participants and by way of the Sunni Muslim Faction.

be protected by alternate measures." Id. The report further informed Plaintiff that he was placed in AC due to his efforts in organizing inmate activity outside the guidelines and that he would remain in AC permanently or until transferred. Id. Plaintiff continued to receive PRC review of his AC status as required under DOC regulations. Doc. 70 at Ex. C. The reviews indicate that Plaintiff was being housed in AC status due to his efforts to organize inmate activity outside the guidelines of the DOC and recommended that he be continued on AC status. Id.

The Court of Appeals for the Third Circuit specifically has upheld the constitutionality of the Pennsylvania Department of Corrections' periodic review procedures as outlined in DOC policy statement 802 for keeping inmates confined in AC. See Shoats, 213 F.3d at 146. There is no dispute that Plaintiff has received his periodic reviews. Plaintiff claims that, although he has received his period reviews as required under DC-ADM 802, they have not been performed in a meaningful manner and, in fact, are merely perfunctory. In support of this claim, he claims that he was kept in AC status due to a false report that indicated that he was in possession of two homemade knives (shanks).

Reviewing the record as a whole, it is clear that Plaintiff's continued confinement in administrative custody comports with the procedural due process requirements upheld by the Court of Appeals for the Third Circuit in Shoats. In this

regard, none of the PRC reviews indicates that Plaintiff was kept in AC status because of a false report concerning shanks.  Doc. 70 at Exs. B & C.  It was Plaintiff's activities in organizing inmates outside DOC regulations that formed the basis for his detention in AC.  Id.  The record evidence of Plaintiff's past activities in organizing prison disturbances clearly supports the PRC's decision to continue Plaintiff in AC as he was a threat to other inmates in general population.  Plaintiff remained a security risk due to his past conduct in organizing inmates at every institution he had been housed in efforts to organize the Sunni Muslims as a religious group.

      The record evidence, as outlined above, reveals that Plaintiff's continued placement in administrative custody is supported by evidence sufficient to pass constitutional muster.  Although Plaintiff argues that his PRC reviews were not meaningful, the record evidence as a whole shows otherwise.  Plaintiff's past history of organizing and intimidating other inmates posed a security risk to others in the institution, as well as to himself.  Whether this Court agrees with DOC's determination is not relevant to the question of whether Plaintiff's constitutional rights have been violated.  It is not

the prerogative of the Court to second guess prison officials' interpretations of security issues.[8]

The record before this Court contains sufficient evidence to support the PRC decisions to continue Plaintiff in administrative confinement on the basis that he presented a risk to prison security and safety.  As Plaintiff has received all the process to which he is entitled through the periodic reviews, Defendants' Motion for Partial Summary Judgment as to the Fourth Cause of Action - Fourteenth Amendment should be granted.  See also Hameed v. Coughlin, 37 F.Supp.2d 133 (N.D.N.Y. 1999) (determination to place inmate in administrative segregation was supported by evidence; periodic reviews of inmate's continued confinement satisfied due process - no circumstances warranted change in conclusion that inmate was considered a security threat); Rhinehart v. Gomez, 1998 WL 410891, *2 (N.D. Cal. July 16, 1998) (undisputed evidence demonstrated that plaintiff received all the process he was due at his periodic review hearings).[9]

---

[8] See, e.g., Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981) ("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators").

[9] Defendants also moved for summary judgment on any claims of retaliation Plaintiff may have raised.  Although Plaintiff raised retaliation claims in his original complaint, none was included in the Amended Complaint wherein he identified the "Legal Claims."  We note that this Court previously directed counsel for Plaintiff to identify any retaliation claim(s) he intended to pursue in a separate paragraph within the section of the Second Amended Complaint wherein

An appropriate Order follows.

/s/ *Amy Reynolds Hay*
AMY REYNOLDS HAY
United States Magistrate Judge


cc: Raymond Sanchas, Esquire
 Suite 300
 Allegheny Building
 429 Forbes Avenue
 Pittsburgh, PA 15219

 Scott A. Bradley, Esquire
 Susan J. Forney, Esquire
 Office of the Attorney General
 564 Forbes Avenue
 6th Floor, Manor Complex
 Pittsburgh, PA 15219

---

the legal claims are set forth. Inasmuch as counsel did not include any retaliation claims in Plaintiff's Second Amended Complaint in the section wherein he identified the four legal claims, we do not address Defendants' arguments concerning retaliation.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN C. SHARP, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | Civil Action No. 00-2156 |
| | ) | |
| SUPERINTENDENT PHILIP L. JOHNSON; ET Al., | ) | |
|     Defendants. | ) | |

## ORDER

**AND NOW**, this 28th day of December, 2005, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (doc. 70) is **GRANTED** and Plaintiff's third and fourth causes of action are hereby **DISMISSED**.

/s/ *Amy Reynolds Hay*
AMY REYNOLDS HAY
United States Magistrate Judge


cc:  Raymond Sanchas, Esquire
    Suite 300
    Allegheny Building
    429 Forbes Avenue
    Pittsburgh, PA 15219

    Scott A. Bradley, Esquire
    Susan J. Forney, Esquire
    Office of the Attorney General
    564 Forbes Avenue
    6th Floor, Manor Complex
    Pittsburgh, PA 15219