**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHAWN C. SHARP,             }
                                   }
           Plaintiff,       }
                                   }   No. 00-2156
           vs.                 }
                                   }   Magistrate Judge Hay
SUPERINTENDENT PHILLIP L.   }
JOHNSON, et al.,            }
                                   }
          Defendants.    }

**JOINT STATEMENT OF STIPULATED FACTS**

AND NOW, comes the Plaintiff, by his attorney, and the Defendants, by their attorneys, and respectfully submit the following Joint Statement of Stipulated Facts:

1.     The Plaintiff, Shawn Sharp (BQ-8429), an inmate in the custody of the Pennsylvania Department of Corrections (DOC), filed this civil rights action in 2000. Following various pretrial motions, Sharp has two claims remaining: first, Sharp alleges a violation of his First Amendment Free Exercise rights and, second, Sharp submits a related claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). These claims arise out of Sharp's confinement at the State Correctional Institution at Pittsburgh (SCI-Pittsburgh) and the State Correctional Institution at Greene (SCI-Greene).

2.     Sharp is an inmate in the custody of the Pennsylvania Department of Corrections and is currently confined at SCI-Dallas.

3.     Inmates in the custody of the DOC are classified based on levels of security risk, with Level 5 being the most secure. See DOC Policy No. 11.2.1, at § IV. ¶ B(1)–(5).

4.     The DOC maintains close custody housing units in most of its facilities, designated as the Restricted Housing Unit ("RHU"). Inmates assigned to the RHU are classified

as Level 5 inmates and are in either Disciplinary Custody status or Administrative Custody status.  See DC-ADM 801 (attached as SMF Exhibit H), at § IV. ¶ Q.

5.    Generally, Disciplinary Custody inmates are serving disciplinary time imposed as a sanction for violation of departmental or institutional rules, as established by the DOC's policy on Inmate Discipline (DC-ADM 801).  See DC-ADM 801, at § IV. ¶ H.

6.    Administrative Custody inmates are confined for non-disciplinary reasons in circumstances that require closer supervision, control, and protection than is provided for in general population; examples of Administrative Custody include self-protection, protection of others, etc.  See DC-ADM 802 (attached as SMF Exhibit I), at § IV. ¶ A.

7.    RHU inmates are confined to their cells at all times, except for periods of exercise, showers and law library scheduled on a daily or weekly basis.  See DC-ADM 801, at § VI. ¶ M.  RHU inmates take all meals in their cells.  Id.

8.    Sharp was received into the DOC on October 31, 1991, and eventually transferred to SCI-Huntingdon on May 20, 1992.

9.    Sharp was transferred from SCI-Huntingdon to SCI-Somerset on July 31, 1997.

10.    On September 18, 1998, a State of Emergency was declared at SCI-Somerset and the institution was "locked down."

11.    That, same day, September 18, 1998, Sharp was transferred to SCI-Pittsburgh.

12.    On November 30, 1999, Lt. Blakey issued an Other Report at No. A126530.  This report was the basis of the temporary designation of Sharp as an Administrative Custody inmate pursuant to DC-ADM 802, at § VI.¶A(1)(f).  As a result, Sharp was placed in the Restricted Housing Unit at SCI-Pittsburgh.

13.    On December 1, 1999, a Program Review Committee comprised of STICKMAN, WINSTEAD and HOWE reviewed Sharp's AC placement.

14.    On December 2, 1999, Capt. Yurich issued an Other Report at No. A122257, which indicated, *inter alia*, that Sharp "will remain on A.C. Status permanently or [until he is] transferred." Sharp remained in the Restricted Housing Unit at SCI-Pittsburgh.

15.    On December 8, 1999, a Program Review Committee comprised of KRYSEVIG, DICKSON and KESSLER reviewed Sharp's AC placement. Additional PRC reviews followed on January 5, 2000 PRC Review (DICKSON, McFETRIDGE, MUTCHLER); February 2, 2000 PRC Review (KRYSEVIG, DICKSON, DeWITT); March 1, 2000 PRC Review (KRYSEVIG, DICKSON, LOCKETT); March 29, 2000 PRC Review (KRYSEVIG, McCOWN, HOLLOCK); June 21, 2000 PRC Review (DICKSON, SHANE, DEWITT); September 13, 2000 PRC Review (KRYSEVIG, DICKSON, LOCKETT); December 6, 2000 PRC Review (DICKSON, SHANE, HOLLOCK); February 28, 2001 PRC Review (KRYSEVIG, DICKSON, LOCKETT).

16.    During this time DOC considered transferring Sharp to a Special Management Unit; however, it was ultimately decided that such a transfer was inappropriate.

17.    DOC subsequently determined that Sharp would be transferred to a different institution. Accordingly, on May 23, 2001, Sharp was given an Administrative Transfer from SCI-Pittsburgh to SCI-Greene.

18.    Upon Sharp's arrival at SCI-Greene on May 23, 2001, Lt. Matzus issued an Other Report at No. A092226. This report was the basis of the temporary designation of Sharp as an Administrative Custody inmate pursuant to DC-ADM 802, at § VI.¶A(1)(f). As a result, Sharp remained in the Restricted Housing Unit at SCI-Greene.

19.     On May 30, 2001, an Other Report issued at No. A72431. This report was the basis of the designation of Sharp as an Administrative Custody inmate at SCI-Greene pursuant to DC-ADM 802, at § VI.¶A(1)(f). As a result, Sharp remained in the Restricted Housing Unit at SCI-Greene.

20.     On June 5, 2001, a Program Review Committee comprised of MAHLMEISTER, CASNER, VIDONISH reviewed Sharp's AC placement. Additional PRC reviews followed on August 30, 2001 PRC Review (JACKSON, MILLER, LOCKETT); November 20, 2001 PRC Review (STOWITZKY, CASNER, BRUNO); February 14, 2002 PRC Review (JACKSON, LOCKETT, VIDONISH); May 9, 2002 PRC Review (JACKSON, LOCKETT, MILLER).

21.     On May 9, 2002, Sharp was released from the RHU and assigned to E-Block/A-Pod. Thereafter, Sharp remained in General Population at SCI-Greene.

22.     On June 13, 2006, Sharp was transferred to SCI-Dallas.

23.     The DOC maintains a religious accommodation policy. Included in this policy are procedures for initiating requests for recognition of a religion or religious group.

24.     At SCI-Pittsburgh, the DOC provided religious accommodation for several religious communities within the inmate population, including Catholic, Protestant, Jewish, Nation of Islam, Muslim, Moorish Science Temple, Native American, Rastafari and Jehovah's Witness.

25.     Sharp had requested accommodation and recognition for a Muslim sect while at SCI-Pittsburgh and while at SCI-Greene.

26.     The DOC considered Sharp's requests, but ultimately denied the requests.

Respectfully submitted,


_____s/ Raymond Sanchas_____          _____s/ Scott A. Bradley_____
Raymond Sanchas                                   Scott A. Bradley
Attorney I.D. No.                                 Senior Deputy Attorney General
                                                  Attorney I.D. No. 44627

Attorney for Plaintiff
                                                  Attorney for Defendants


Date:  June 9, 2007